**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TACTICAL MEDICAL SOLUTIONS, INC. | ) | |
| | ) | |
| Plaintiff | ) | Civil Action No. |
| | ) | |
| vs. | ) | |
| | ) | |
| DR. RONALD KARL, EMI EMERGENCY | ) | |
| MEDICAL INTERNATIONAL A/K/A | ) | |
| EMERGENCY MEDICAL INSTRUMENTS, | ) | |
| AND Copquest, Inc. | ) | |
| | ) | |
| Defendants | ) | |

## COMPLAINT

Tactical Medical Solutions, Inc. ("TMS"), for its complaint against defendants Dr. Ronald Karl ( "KARL" ), EMI Emergency Medical International a/k/a Emergency Medical Instruments ("EMI") and Copquest, Inc. ("Copquest"), alleges as follows:

### PRELIMINARY STATEMENT

1. This Complaint includes claims for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. This Complaint also includes claims for false designation of origin, trade dress infringement and false description in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). This Complaint further includes claims for unfair competition under Illinois common law and Illinois Statute 815 ILCS § 510. Finally, this Complaint includes claims for copyright infringement arising under the Copyright Act, 17 U.S.C. § 101 *et seq.*.

**PARTIES**

2.   Tactical Medical Solutions, Inc. ("TMS") is a Corporation organized and existing under the laws of the State of South Carolina, with its principal place of business at 112 North Park Drive, Andersen, South Carolina 29625.

3.   Defendant Ronald Karl purports to be the President and CEO of EMI.  Mr. Karl is believed to reside at 42 W. 550 Hawk Circle, St. Charles, Illinois.

4.   Defendant EMI purports to be a company with a place of business at 44 W. 528 Rte. 64, Lily Lake, Illinois 60151.  *See* http://emiinternational.net/. However, after reasonably diligent search, no corporate registration for EMI has been located.

5.   Defendant Copquest.com, Inc. is a California corporation believed to be doing business at 365 Camino Carillo, Unit A, Camarillo, CA 93012.

**JURISDICTION AND VENUE**

6.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b) and 15 U.S.C. § 1121, and supplemental jurisdiction under 28 U.S.C. § 1367(a).

7.    This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because, upon information and belief, Defendants Karl, EMI, and Copquest are citizens of different states than TMS and the amount in controversy exceeds $75,000, exclusive of costs and interest.

8.  This Court has personal jurisdiction over Defendants EMI, Copquest and Karl by virtue of their transacting business in this district by at least importing, offering to sell, exposing for sale, selling and/or advertising accused products to customers in Illinois and this judicial district.

9.   Upon information and belief, Defendants Karl and EMI each have a place of business in this judicial district.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), (c) and 1400(b) since it is the judicial district in which Defendants conduct continuous and systematic business, advertise, and have caused the injuries complained of herein.

## STATEMENT OF FACTS

### A.  TMS and Its Products

11.     TMS is a veteran-owned small business that designs and sells a variety of products for first responders, emergency medical personnel, law enforcement and military personnel.

12.     TMS began operations in 2003 under the name Tactical Medical Solutions, LLC.  In 2006, TMS changed its name to Tactical Medical Solutions, Inc. Since its inception, TMS has been known to its customers and competitors worldwide and in the United States by the "TACMED" trade name.

13.     TMS' products are well known in its markets and are reputed to be of the highest quality and craftsmanship.  TMS has and continues to be dedicated to designing and providing high quality products and providing customer service of the highest order.

14.     Based on the quality of its goods and the quality of the services provided to its customers, TMS has earned substantial goodwill and is held in high regard in its markets. TMS' excellent reputation is a direct result of its dedication to skilled craftsmanship, its careful selection of and quality control over its products, its customer service and the efforts of its employees and carefully selected network of distributors,

resellers and suppliers to maintain the highest levels of integrity in their marketing and sales efforts.

15.     Throughout its existence, TMS has continuously and actively promoted itself, its products, and its services through various channels in the trade including, notably, the ongoing production and distribution of product catalogs, ongoing use of tis website, ongoing promotion through distributors and resellers, and by regularly attending industry trade shows.  TMS also enjoys substantial word-of-mouth marketing from its many satisfied customers.  As a result of its programs and efforts, over the past decade, TMS has established very substantial goodwill and a correspondingly substantial network of regional and national resellers and distributors.

16.     On numerous occasions, TMS has been favorably recognized by government agencies.  Most recently, in 2014, the U.S. Department of Commerce's Commercial Service presented TMS with the Agency's Export Achievement Award.

17.     An important product designed and brought to market by TMS is a tourniquet specifically developed to facilitate one-handed application (hereinafter referred to as the "TMS Tourniquet").  The tourniquet is sold worldwide under the incontestable SOF® trademark (U.S. Trademark Registration No. 3,619,411).

18.     The TMS Tourniquet is approved for use by the Department of Defense and it is currently used by U.S. and foreign militaries.

19.     The TMS Tourniquet is the standard issue tourniquet for multiple first responders and law enforcement agencies throughout the world.  Locally, the TMS Tourniquet is the standard issue tourniquet for the Chicago Division of the Drug Enforcement Administration.

20.      The TMS Tourniquet was tested by the United States Army Institute for Surgical Research and found to be 100% effective on both upper and lower extremities.

**B.  TMS' Patents**

21.      On August 17, 2010, United States Patent No. 7,776,064 B2 (the "'064 patent"), entitled "Tourniquet Article", was duly and legally issued by the United States Patent and Trademark Office.  A copy of the '064 patent is attached hereto as Exhibit A.

22.       TMS is the owner of the '064 patent by assignment.

23.      TMS provides notice of the '064 patent in accordance with 35 U.S.C. § 287.

24.      On November 29, 2011, United States Patent No. D649,642 S (the "'642 patent"), entitled "Tourniquet Handle", was duly and legally issued by the United States Patent and Trademark Office.  A copy of the '642 patent is attached hereto as Exhibit B.

25.      TMS is the owner of the '642 patent by assignment.

26.      TMS provides notice of the '642 patent in accordance with 35 U.S.C. § 287.

27.      On November 6, 2012, United States Patent No. 8,303,620 B2 (the "'620 patent"), entitled "Tourniquet Article", was duly and legally issued by the United States Patent and Trademark Office.  A copy of the '620 patent is attached hereto as Exhibit C.

28.      TMS is the owner of the '620 patent by assignment.

29.      TMS provides public notice of the '620 patent in accordance with 35 U.S.C. § 287.

**C.  The TACMED Trade Name and Mark**

30.      TMS, which is commonly referred to in the trade as TACMED, is a nationally and internationally known manufacturer and distributor of a wide range of products particularly in the emergency medical service (EMS), first responder and military medical fields.  TMS promotes and sells its products in a variety of ways, including but not limited to directly through its website at www.tacmedsolutions.com, through booths at trade shows, and through government contracts.  TMS also uses a network of national and international resellers and distributors to actively promote and sell its products.

31.      At a minimum, since before 2009, TMS has consistently and continuously used the mark TACMED in connection with the sale and marketing of field medical kits, tourniquets, bandages and other products directed to the military, first responder and law enforcement communities.  As a result, the TACMED mark has become a source designator for TMS with respect to these communities.  Consumers in any one of the military medical, first responder, and law enforcement communities have come to recognize goods bearing the TACMED mark as goods originating from TMS.

32.      By virtue of TMS' extensive sales, advertising and promotion of its business and products under the TACMED mark and trade name, TMS has become well known to the consumers throughout the United States and abroad and the TACMED name is widely recognized as being associated with TMS and its line of products.

**D.  TMS' Trade Dress**

33.      For just under a decade, TMS has been marketing and selling its tourniquets to the military, first responder, and law enforcement communities, and to

individual users alike.  The TMS Tourniquet is characterized by a unique, non-functional overall look and feel including a distinct handle design featuring an elongated cylindrical rod having two ends in the shape of truncated cones and having a knurled intermediate section, a base and strap having a woven look and texture and a label disposed on the underside of the strap proximate to an end (the "TMS Trade Dress").  The look and feel of the TMS Tourniquet is unique and serves to immediately identify the tourniquets as coming from just one source.

34.    Since its inception, TMS has sold over 1.25 million tourniquets to customers worldwide.

35.    In 2013, the United States Department of Defense procured 30,000 TMS Tourniquets for soldiers deployed in Afghanistan.

36.    TMS was recently awarded a contract by the North Atlantic Treaty Organization Support Agency for the TMS Tourniquet.

37.    The TMS Tourniquet is used by many other organizations including but not limited to the Department of Homeland Security, the U.S. Food and Drug Administration, the Los Angeles Police Department, the Dallas Police Department, and Wisconsin Emergency Medical Services

38.    There has been significant media coverage of instances where TMS tourniquets were used in emergency situations to help save lives.  See, for example, http://www2.oconeelaw.com/news/?p=2235, http://azstarnet.com/news/blogs/police-beat/new-first-aid-kits-already-helping-tucson-police-officers-save/article_b4afe184-0ca6-5020-ac21-d3cc1bbce2bc.html,   http://www.news10.com/story/24846664/albany-

police-use-new-survival-kits-in-field, and http://www.kristv.com/news/officers-wounded-in-shootout-in-good-spirits-/.

39.     The TMS Tourniquet was worn by Mark Wahlberg's character and several others in the feature film entitled "Lone Survivors".

40.     The TMS Trade Dress is non-functional.

41.     The TMS Trade Dress distinguishes the TMS Tourniquet from its competition.

42.     The TMS Trade Dress is unique and has acquired secondary meaning in that tourniquet users and purchasers, when seeing tourniquets bearing the TMS Trade Dress, believe that those tourniquets originate from or are endorsed and/or approved by TMS itself.  Tourniquet purchasers and users have come to recognize the well-known appearance of the TMS Trade Dress and associate that appearance with TMS as the source of tourniquets.

43.     Law enforcement personnel, first responder, military medical and emergency medical personnel regard the TMS Tourniquet as being of highest quality and reliability.

**E.  TMS's Copyright Registration**

44.     TMS is the owner by assignment of the copyright to the following photograph of its tourniquet (hereinafter referred to as the "Tourniquet Photo") :



45.     The foregoing photograph constitutes an original work of authorship which is the subject of United States Copyright Registration No. Vau 1-161-333.  A true and correct copy of the registration certificate is attached hereto as Exhibit D.

46.     TMS is the owner of the copyright to the following photograph, (hereinafter referred to as "the Camouflage Photo"):



47.     The foregoing photograph constitutes an original work of authorship which is the subject of United States Copyright Registration No. VA 1-915-265. A true and correct copy of the registration certificate is attached hereto as Exhibit E.

### F. Defendants Karl and EMI

48.     Upon information and belief, Defendants Karl and EMI (hereinafter referred to collectively as the "Karl Defendants") design, manufacture, advertise, promote, distribute, sell and/or offer for sale products for EMS, fire and police professionals.

49.     Upon information and belief, long subsequent to adoption of the TACMED mark and trade name by TMS and without TMS' consent, the Karl Defendants intentionally adopted, and began prominent use of the TACMED mark on or in connection with a line of products in direct competition with TMS.  Among the products that the Karl Defendants' market and sell under the TACMED designation are medical kits, tourniquets, forceps, scissors, shears, medical bags, fanny packs,  and holsters.

50.     The Karl Defendants' product line includes a knock off of the TMS Tourniquet sold under the designation "T.a.t. tourniquet".

51.     Upon information and belief, the Karl Defendants have sold and offered to sell T.a.t. tourniquets within the United States as a standalone product and also as a component of at least three kits:  the TACMED Response Kit, the TACMED Response Pack Complete Kit, and the TACMED Basic Response Kit.

52.     The T.a.t. tourniquet is substantially identical in appearance to the TMS Tourniquet.

53.     The knock off T.a.t. tourniquet is of inferior quality to the TMS Tourniquet.

54.     Upon information and belief the Karl Defendants operate the website that resolves to www.emiinternational.net (hereinafter "the EMI website").

55.     The Karl Defendants advertise, promote, sell and/or distribute their products to a similar class of customers as TMS, including Internet resellers and distributors.

56.     Relevant consumers are highly likely to be confused as to the source, sponsorship, or affiliation of the Karl Defendants' products due to the similarity between the products offered by the Karl Defendants and TMS and due to the similarity between TMS' TACMED trade name and mark and the Karl Defendants' TACMED mark.

57.     Exhibit F is a true and correct copy of a two pages downloaded from the EMI website.  Exhibit F incorporates and displays multiple copies of the Tourniquet Photo as well as a referencing the Karl Defendants' infringing line of "TACMED™" products.

58.     By displaying photographs of the TMS tourniquet on their website as shown, for example, in Exhibit F, the Karl Defendants are falsely representing that the tourniquet displayed is the T.a.t. tourniquet in an attempt to deceive and confuse customers and other visitors to the EMI website.

## G. Defendant Copquest

59.     Upon information and belief, Defendant Copquest advertises, promotes, distributes, sells and/or offers for sale the Karl Defendants' entire TACMED product line, including the knock off T.a.t. tourniquet.

60.     Upon information and belief, Copquest has purchased T.a.t. tourniquets from the Karl Defendants and has sold and offered to sell the T.a.t. tourniquets that it purchased from the Karl Defendants within the United States as a standalone product and also as a component of at least the EMI TACMED Basic Response Kit Complete,

EMI TACMED Law Enforcement Combat Gunshot Trauma Kit, EMI TACMED Response Packs Complete Kit, and EMI TACMED Response Kit Complete.

61.     Exhibit G is a true and correct copy of a page downloaded from Copquest's website (www.copquest.com).  Exhibit G displays a web page that incorporates a copy of the Tourniquet Photo and the Camouflage Photo.

62.     Exhibit H is a true and correct copy of a shopping cart web page downloaded from Copquest's website.  Exhibit H includes a copy of the Tourniquet Photo falsely identified as the knock off T.a.t. tourniquet.

63.     By displaying photographs of the TMS tourniquet on its website, Copquest is falsely representing that the TMS tourniquet is the T.a.t. tourniquet in an attempt to deceive and confuse customers and other visitors to the Copquest website.

## COUNT I – PATENT INFRINGEMENT
## U.S. PATENT NO. 7,776,064 B2
### (All Defendants)

64.     TMS repeats and reaffirms all of the allegations contained in the preceding paragraphs numbered 1 through 63, with the same force and effect as if fully set forth herein.

65.     On information and belief, all Defendants are now and have been directly infringing the '064 patent, literally and under the doctrine of equivalents, by, among other things, making, using, offering to sell, selling and/or importing products covered by one or more claims of the '064 patent.  Such infringing products include, but are not limited to, the T.a.t. tactical tourniquet displayed in Exhibits G and H.  All Defendants are thus liable for infringement of the '064 patent pursuant to 35 U.S.C. § 271(a).

66.     Defendants infringement has been, and continues to be, deliberate, willful and knowing.

67.     By reason of the acts and practices of Defendants, they have caused, are causing and, unless such acts and practices are enjoined by the Court, will continue to cause, immediate and irreparable harm to TMS, for which there is no adequate remedy at law and for which TMS is entitled to injunctive relief under 35 U.S.C. § 283.

68.     As a direct and proximate consequence of the acts and practices of Defendants, TMS has also been, is being, and unless such acts and practices are enjoined by the Court, will continue to be injured in its business, and property rights, and has suffered, is suffering, and will continue to suffer injury and damages for which Plaintiffs are entitled to relief under 35 U.S.C. § 284.

69.     This is an exceptional case within the meaning of 35 U.S.C. § 285 and TMS is therefore entitled to its reasonable attorney's fees.

**COUNT II – PATENT INFRINGEMENT**
**U.S. PATENT NO. 8,303,620 B2**
**(All Defendants)**

70.     TMS repeats and reaffirms all of the allegations contained in the preceding paragraphs numbered 1 through 69, with the same force and effect as if fully set forth herein.

71.     On information and belief, all Defendants are now and have been directly infringing the '620 patent, literally and under the doctrine of equivalents, by, among other things, making, using, offering to sell, selling and/or importing products covered by one or more claims of the '620 patent. Such infringing products include, but are not limited to, the T.a.t. tactical tourniquet displayed in Exhibits G and H. All Defendants

are thus liable for infringement of the '620 patent pursuant to 35 U.S.C. § 271(a).

72.     Defendants' infringement has been, and continues to be, deliberate, willful and knowing.

73.     By reason of the acts and practices of Defendants, they have caused, are causing and, unless such acts and practices are enjoined by the Court, will continue to cause, immediate and irreparable harm to TMS, for which there is no adequate remedy at law and for which TMS is entitled to injunctive relief under 35 U.S.C. § 283.

74.     As a direct and proximate consequence of the acts and practices of Defendants, TMS has also been, is being, and unless such acts and practices are enjoined by the Court, will continue to be injured in its business, and property rights, and has suffered, is suffering, and will continue to suffer injury and damages for which TMS is entitled to relief under 35 U.S.C. § 284.

75.     This is an exceptional case within the meaning of 35 U.S.C. § 285 and TMS is therefore entitled to its reasonable attorney's fees.

## COUNT III – DESIGN PATENT INFRINGEMENT
## U.S. PATENT NO. D649,642 S
### (All Defendants)

76.     TMS repeats and reaffirms all of the allegations contained in the preceding paragraphs numbered 1 through 75, with the same force and effect as if fully set forth herein.

77.     The '642 Patent claims an "ornamental design for a tourniquet handle."

78.     The T.a.t. tourniquet handle appropriates the ornamental design for a tourniquet handle as shown and described in the '642 Patent.

79.     The T.a.t. tourniquet is substantially visually identical to the TMS

Tourniquet.  See the chart below.

| TMS Tourniquet | T.a.t. Tourniquet |
|---|---|
|  | |

80.      In the eye of the ordinary observer, giving such attention as a purchaser usually gives, the ornamental design for a tourniquet handle claimed in the '642 Patent and the T.a.t. tourniquet handle are substantially the same; the resemblance is such as to deceive an ordinary observer, inducing such observer to purchase one supposing it to be the other.

81.      All Defendants have infringed and continue to infringe the ornamental design for a tourniquet handle claimed in the '642 Patent within the meaning of 35 U.S.C. § 271(a) through the foregoing activities including, without limitations, importing, selling and offering to sell the T.a.t. tourniquet.

82.      Upon information and belief, Defendants have been aware of the '642 Patent and their infringement thereof, yet have continued their infringement without regard to the '642 Patent or TMS' rights.  The infringement continues today despite an objectively high likelihood that Defendants' actions constitute infringement of the '642 Patent.  This objectively high likelihood of infringement was either known or so obvious

that it should have been known to Defendants. Defendants' infringement of the '642 Patent has been willful, deliberate and objectively reckless.

83.     By reason of the acts and practices of Defendants, they have caused, are causing and, unless such acts and practices are enjoined by the Court, will continue to cause, immediate and irreparable harm to TMS, for which there is no adequate remedy at law and for which TMS is entitled to injunctive relief under 35 U.S.C. § 283.

84.     Defendants' infringement of the '642 Patent has injured TMS and TMS is entitled to recover damages adequate to compensate it for such infringement, but in no event less than a reasonable royalty, as permitted under 35 U.S.C. § 284, as well as damages for design patent infringement permitted under 35 U.S.C. § 289.

85.     This is an exceptional case within the meaning of 35 U.S.C. § 285 and TMS is therefore entitled to its reasonable attorney's fees.

## COUNT IV – TRADE DRESS INFRINGEMENT – 15 U.S.C. § 1125(A)
### (All Defendants)

86.     TMS realleges and incorporates by reference the allegations contained in paragraphs 1 through 85.

87.     The TMS Trade Dress is non-functional – it is not essential to the product's purpose and it is not dictated by concern for cost efficiency.

88.     TMS has expended considerable time, effort and resources to design and develop the TMS Trade Dress.

89.     The purchasing public has come to recognize the TMS Trade Dress and associate that trade dress with TMS as the source of its tourniquets.

90.     The T.a.t. tourniquet sold by Defendants unlawfully copies, imitates and duplicates the distinctive TMS Trade Dress.

91.     Defendants' sales and marketing of T.a.t. tourniquets is likely to cause confusion among consumers.

92.     Defendants' actions constitute trade dress infringement in violation of the Lanham Act, 15 U.S.C. 1125(a).  TMS has been and will continue to be injured as a result of Defendants' conduct.  TMS has no adequate remedy at law for these injuries. Unless Defendants are restrained by this Court from continuing to infringe the TMS trade dress, these injuries will continue.

### COUNT V FALSE DESIGNATION OF ORIGIN – 15 U.S.C. § 1125(a) (TACMED Mark)(All Defendants)

93.     TMS realleges and incorporates by reference the allegations contained in paragraphs 1through 92.

94.     Defendants' distribution, sale, and offering for sale of products identical or related to TMS' products, e.g., tourniquets, field medical kits, etc., under the TACMED mark constitutes false designation of origin or sponsorship of such goods and tends to falsely represent that the Defendants' goods originate from TMS or that said goods have been sponsored, approved, authorized or licensed by TMS or are in some way affiliated or connected with TMS or that TMS' goods and/or services originate from the Defendants or are sponsored, approved, authorized or licensed by the Defendants.  The Defendants' conduct is likely to confuse mislead, and deceive a not insubstantial number of distributors, relevant consumers and other purchasers, and members of the public as to the origin of the goods and services.

95.     Upon information and belief, Defendants' above-described actions have injured and will continue to cause immediate and irreparable injury and damage to TMS. TMS has no adequate remedy at law for these injuries.  Such immediate and irreparable

injury and damage will continue unless and until Defendants are enjoined by this Court.

Accordingly, TMS is entitled to an injunction under 15 U.S.C. § 1116, prohibiting

Defendants from further actions in violation of the Lanham Act.

96.     Defendants' use of  a mark confusingly similar to TMS' TACMED mark

and trade name was and is willful, knowing, malicious and/or intentional, thereby

making this case exceptional under 35 U.S.C. § 1117(a).

### COUNT VI UNFAIR COMPETITION ILLINOIS COMMON LAW
### (TACMED Mark)(All Defendants)

97.     TMS realleges and incorporates by reference the allegations contained in

paragraphs 1through 96.

98.     Defendants' distribution, sale, and offering for sale of products identical or

related to TMS' products, e.g., tourniquets, field medical kits, etc., under the TACMED

mark constitutes unfair competition under Illinois common law because Defendants'

have caused a likelihood of confusion or of misunderstanding as to the source,

sponsorship approval, or certification of Defendants' T.a.t. tourniquets, and as to

Defendants' affiliation, connection, and association with and certification by TMS.

99.     Defendants' acts complained of herein constitute unfair competition and

deceptive trade practices under Illinois common law also because Defendants have

used deceptive representations in connection with the T.a.t. tourniquets and have

engaged in other conduct which creates a likelihood of confusion or misunderstanding.

100.     As a consequence of Defendants' acts of unfair competition as aforesaid,

TMS has suffered and will continue to suffer monetary damages in an amount to be

determined at trial.

101.     Defendants have profited from Defendants' unfair competition.

102.     Defendants' unfair competition was and is willful, knowing, malicious, and/or intentional.

103.     TMS does not have a fully adequate remedy at law.

104.     Defendants' acts complained of herein constitute unfair competition and deceptive trade practices under Illinois common law.

105.     Defendants' use of a mark confusingly similar to TMS' TACMED mark and trade name was and is willful, knowing, malicious and/or intentional.

### COUNT VII – COPYRIGHT INFRINGEMENT
### (Tourniquet Photo)(All Defendants)

106.     TMS realleges and incorporates by reference the allegations contained in paragraphs 1through 105.

107.     As the owner of the Copyright Registration No. Vau 1-161-333 for the Tourniquet Photo, TMS has the exclusive right to reproduce, to prepare derivative works based on, to distribute copies of, and to publicly display the Tourniquet Photo.

108.     Upon information and belief, Defendants had access to the Tourniquet Photo which is and/or was displayed on many of TMS' authorized distributors' websites. One such website is www.chinookmed.com.

109.     Defendants copied the Tourniquet Photo and currently display the copied Tourniquet Photo on their respective websites (www.emiinternationa.net and www.copquest.com)

110.     Defendants knowingly, deliberately and willingly copied the Tourniquet Photo.

19

111.     Defendants knowingly, deliberately and willingly use the Tourniquet Photo on their respective websites and in their marketing materials to sell the knock off T.a.t. tourniquet in direct competition with TMS, thereby causing TMS monetary and other damages.

112.     TMS is entitled to recover from Defendants the damages TMS has sustained and will sustain, and any gains, profits and advantages obtained by Defendants as a result of Defendants' acts alleged herein pursuant to 17 U.S.C. § 504.

113.     TMS is also entitled to an injunction prohibiting Defendants from further infringement of the Tourniquet Photo pursuant to 17 U.S.C. § 502.

## COUNT VIII – FALSE DESCRIPTION OR REPRESENTATION – 15 U.S.C. § 1125(a)
### (Tourniquet Photo)(All Defendants)

114.     TMS realleges and incorporates by reference the allegations contained in paragraphs 1 through 113.

115.     Defendants have displayed and continue to display the Tourniquet Photo on their respective websites and falsely represent that the Tourniquet Photo is a photograph of the T.a.t. tourniquet.

116.     Defendants use their respective websites to advertise, offer for sale and sell the knock off T.a.t. tourniquets to various entities located throughout the United States.

117.     Upon information and belief, the T.a.t. tourniquet is of inferior construction to the TMS Tourniquet.

118.     Defendants' use of the Tourniquet Photo as described herein misrepresents the nature, characteristics, and/or qualities of Defendants' T.a.t. tourniquet.

119.     Defendants' use of the Tourniquet Photo is material to consumer's purchasing decisions.

120.     Upon information and belief, Defendants' misrepresentations have injured and will continue to cause immediate and irreparable injury and damage to TMS.  TMS has no adequate remedy at law for these injuries.  Such immediate and irreparable injury and damage will continue unless and until Defendants are enjoined by this Court. Accordingly, TMS is entitled to an injunction under 15 U.S.C. § 1116, prohibiting Defendants form further actions in violation of the Lanham Act.

121.     Defendants' false and/or misleading descriptions and/or representations concerning the T.a.t. tourniquet were and are willful, knowing, malicious and/or intentional, thereby making this case exceptional under 15 U.S.C. § 1117(a).

### COUNT IX – FALSE DESIGNATION OF ORIGIN – 15 U.S.C. § 1125(a)
### (Tourniquet Photo)(All Defendants)

122.     TMS realleges and incorporates by reference the allegations contained in paragraphs 1 through 121.

123.     The Tourniquet Photo depicts distinctive aspects of the TMS Tourniquet including the TMS Trade Dress which has acquired secondary meaning and the TMS tourniquet handle design which is the subject of the '642 Patent and which has also acquired secondary meaning.

124.     Defendants' marketing and false and/or misleading descriptions and/or representations regarding the T.a.t. tourniquet exemplified by use of the Tourniquet Photo as described herein is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection and/or association of the source of the T.a.t. tourniquet with the source of the TMS Tourniquet.

125.     Defendants' marketing and false and/or misleading descriptions and/or representations regarding the T.a.t. tourniquet exemplified by use of the Tourniquet Photo as described herein is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship and/or approval of the T.a.t. tourniquet by TMS.

126.     As a result of Defendants' conduct, TMS has suffered and will continue to suffer monetary damages in an amount to be determined at trial, and damage to TMS' goodwill causing serious and irreparable injury to TMS, its products and its reputation, for which TMS has no adequate remedy at law.

127.     Defendants' marketing and use of the Tourniquet Photo and Defendants' false and/or misleading descriptions and/or representations concerning the T.a.t. tourniquet were and are willful, knowing, malicious and/or intentional, thereby making this case exceptional under 15 U.S.C. § 1117(a).

## COUNT X – UNFAIR COMPETITION UNDER ILLINOIS STATUTE 815 ILCS § 510 (**Tourniquet Photo)(All Defendants)**

128.     TMS realleges and incorporates by reference the allegations contained in paragraphs 1 through 127.

129.     Defendants' use of the Tourniquet Photo as complained of herein constitute unfair competition and deceptive trade practices under 815 ILCS § 510, because in the course of Defendants' business, Defendants have caused a likelihood of confusion or of misunderstanding as to source, sponsorship, approval, or certification of Defendants' T.a.t. tourniquet, and as to Defendants' affiliation, connection and association with and certification by TMS.

130.     Defendants' acts complained of herein constitute unfair competition and deceptive trade practices under 815 ILCS § 510 also because Defendants have used deceptive representations in connection with the T.a.t. tourniquet and have engaged in other conduct which creates a likelihood of confusion or misunderstanding.

131.     As a consequence of Defendants' acts of unfair competition as set forth herein, TMS has suffered and will continue to suffer monetary damages in an amount to be determined at trial.

132.     Defendants have profited from Defendants' unfair competition as set forth herein.

133.     Defendants' unfair competition was and is willful, knowing, malicious, and/or intentional.

134.     TMS does not have an adequate remedy at law.

## COUNT XI – UNFAIR COMPETITION UNDER ILLINOIS COMMON LAW
### (Tourniquet Photo)(All Defendants)

135.     TMS realleges and incorporates by reference the allegations contained in paragraphs 1 through 134.

136.     Defendants' acts complained of herein constitute unfair competition and deceptive trade practices under Illinois common law, because in the course of Defendants' business, Defendants have caused a likelihood of confusion or of misunderstanding as to source, sponsorship, approval, or certification of Defendants' T.a.t. tourniquet, and as to Defendants' affiliation, connection and association with and certification by TMS.

137.     Defendants' acts complained of herein constitute unfair competition and deceptive trade practices under Illinois common law also because Defendants have used deceptive representations in connection with the T.a.t. tourniquet and have engaged in other conduct which creates a likelihood of confusion or misunderstanding.

138.     As a consequence of the Defendants' acts of unfair competition as set forth herein, TMS has suffered and will continue to suffer monetary damages in an amount to be determined at trial.

139.     Defendants have profited from Defendants' unfair competition as set forth herein.

140.     Defendants' unfair competition was and is willful, knowing, malicious, and/or intentional.

141.     TMS does not have an adequate remedy at law.

**COUNT XII – FALSE DESCRIPTION OR REPRESENTATION – 15 U.S.C. § 1125(a)**
**(Camouflage Photo)(Defendant Copquest)**

142.     TMS realleges and incorporates by reference the allegations contained in paragraphs 1 through 141.

143.     Defendant Copquest has displayed and continues to display the Camouflage Photo on its website and falsely represent that the Camouflage Photo is a photograph of the T.a.t. tourniquet.

144.     Defendant Copquest uses its websites to advertise, offer for sale and sell the knock off T.a.t. tourniquets to various entities located throughout the United States.

145.     Upon information and belief, the T.a.t. tourniquet is of inferior construction to the TMS tourniquet.

146.     Defendant Copquest's use of the Camouflage Photo as described herein misrepresents the nature, characteristics, and/or qualities, of the T.a.t. tourniquet.

147.     Defendant Copquest's use of the Camouflage Photo is material to consumer's purchasing decisions.

148.     Upon information and belief, Defendant Copquest's misrepresentations have injured and will continue to cause immediate and irreparable injury and damage to TMS.  TMS has no adequate remedy at law for these injuries.  Such immediate and irreparable injury and damage will continue unless and until Defendant Copquest is enjoined by this Court.  Accordingly, TMS is entitled to an injunction under 15 U.S.C. § 1116, prohibiting Defendant Copquest from further actions in violation of the Lanham Act.

149.     Defendant Copquest's false and/or misleading descriptions and/or representations concerning the T.a.t. tourniquet were and are willful, knowing, malicious and/or intentional, thereby making this case exceptional under 15 U.S.C. § 1117(a).

### COUNT XII – FALSE DESIGNATION OF ORIGIN – 15 U.S.C. § 1125(a)
### (Camouflage Photo)(Defendant Copquest)

150.     TMS realleges and incorporates by reference the allegations contained in paragraphs 1 through 149.

151.     The Camouflage Photo depicts distinctive aspects of the TMS Tourniquet including the TMS Trade Dress which has acquired secondary meaning and the TMS tourniquet handle design which is the subject of the '642 Patent and which has also acquired secondary meaning.

152.     Defendant Copquest's marketing and false and/or misleading descriptions and/or representations regarding the T.a.t. tourniquet exemplified by use of the

Camouflage Photo as described herein is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection and/or association of the source of the T.a.t. tourniquet with the source of the TMS tourniquet.

153.    Defendant Copquest's marketing and false and/or misleading descriptions and/or representations regarding the T.a.t. tourniquet exemplified by use of the Camouflage Photo as described herein is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship and/or approval of the T.a.t. tourniquet by TMS.

154.    As a result of Defendant Copquest's conduct, TMS has suffered and will continue to suffer monetary damages in an amount to be determined at trial, and damage to TMS' goodwill causing serious and irreparable injury to TMS, its products and its reputation, for which TMS has no adequate remedy at law.

155.    Defendant Copquest's marketing and use of the Camouflage Photo and Defendant Copquest's false and/or misleading descriptions and/or representations concerning the T.a.t. tourniquet were and are willful, knowing, malicious and/or intentional, thereby making this case exceptional under 15 U.S.C. § 1117(a).

### COUNT XIV – UNFAIR COMPETITION UNDER ILLINOIS STATUTE 815 ILCS § 510 (Camouflage Photo)(Defendant Copquest)

156.    TMS realleges and incorporates by reference the allegations contained in paragraphs 1 through 155.

157.    Defendant Copquest's use of the Camouflage Photo as complained of herein constitute unfair competition and deceptive trade practices under 815 ILCS § 510, because in the course of Defendant Copquest's business, Defendant Copquest

has caused a likelihood of confusion or of misunderstanding as to source, sponsorship, approval, or certification of Defendant Copquest's T.a.t. tourniquet, and as to Defendant Copquest's affiliation, connection and association with and certification by TMS.

158.     Defendant Copquest's acts complained of herein constitute unfair competition and deceptive trade practices under 815 ILCS § 510 also because Defendant Copquest has used deceptive representations in connection with the T.a.t. tourniquet and has engaged in other conduct which creates a likelihood of confusion or misunderstanding.

159.     As a consequence of the Defendant Copquest's acts of unfair competition as set forth herein, TMS has suffered and will continue to suffer monetary damages in an amount to be determined at trial.

160.     Defendant Copquest has profited from its unfair competition as set forth herein.

161.     Defendant Copquest's unfair competition was and is willful, knowing, malicious, and/or intentional.

162.     TMS does not have an adequate remedy at law.

**COUNT XV – UNFAIR COMPETITION UNDER ILLINOIS COMMON LAW**
(**Camouflage Photo)(Defendant Copquest)**

163.     TMS realleges and incorporates by reference the allegations contained in paragraphs 1 through 162.

164.     Defendant Copquest's acts complained of herein constitute unfair competition and deceptive trade practices under Illinois common law, because in the course of Defendant Copquest's business, Defendant Copquest has caused a likelihood

of confusion or of misunderstanding as to source, sponsorship, approval, or certification

of Defendant Copquest's T.a.t. tourniquet, and as to Defendant Copquest's affiliation,

connection and association with and certification by TMS.

166. Defendant Copquest's acts complained of herein constitute unfair

competition and deceptive trade practices under Illinois common law also because

Defendant Copquest has used deceptive representations in connection with the T.a.t.

tourniquet and has engaged in other conduct which creates a likelihood of confusion or

misunderstanding.

166. As a consequence of the Defendants' acts of unfair competition as set

forth herein, TMS has suffered and will continue to suffer monetary damages in an

amount to be determined at trial.

167. Defendant Copquest has profited from its unfair competition as set forth

herein.

168. Defendant Copquest's unfair competition was and is willful, knowing,

malicious, and/or intentional.

169. TMS does not have an adequate remedy at law.

**COUNT XVI – COPYRIGHT INFRINGEMENT**
**(Camouflage Photo)(Defendant Copquest)**

170. TMS realleges and incorporates by reference the allegations contained in

paragraphs 1through 169.

171. As the owner of the Copyright Registration No. VA 1-915-265 for the

Camouflage Photo, TMS has the exclusive right to reproduce, to prepare derivative

works based on, to distribute copies of, and to publicly display the Camouflage Photo.

172.    Upon information and belief, Defendant Copquest had access to the Camouflage Photo which is and/or was displayed on many of TMS' authorized distributors' websites.

173.    Defendant Copquest copied the Camouflage Photo has displayed and is currently displaying the copied Camouflage Photo on its website at www.copquest.com.

174.    Defendant Copquest knowingly, deliberately and willingly copied the Camouflage Photo.

175.    Defendant Copquest knowingly, deliberately and willingly uses the Camouflage Photo on its website and in its marketing materials to sell the knock off T.a.t. tourniquet in direct competition with TMS, thereby causing TMS monetary and other damages.

176.    TMS is entitled to recover from Defendant Copquest the damages TMS has sustained and will sustain, and any gains, profits and advantages obtained by Defendant Copquest as a result of Defendant Copquest's acts alleged herein pursuant to 17 U.S.C. § 504.

177.    TMS is also entitled to an injunction prohibiting Defendant Copquest from further infringement of the Camouflage Photo pursuant to 17 U.S.C. § 502.

### JURY DEMAND

Pursuant to Rule 38(b), Fed. R. Civ. P., and the Seventh Amendment to the United States Constitution, TMS hereby demands a trial by jury.

### REQUESTED RELIEF

WHEREFORE, TMS respectfully asks this Court to enter judgment against Defendants as follows:

**COUNTS I-III – PATENT INFRINGEMENT CLAIMS**

A.      An award of damages adequate to compensate TMS for the infringement that has occurred, but in no event less than a reasonable royalty as permitted by 35 U.S.C. § 284, together with prejudgment interest from the date the infringement began;

B.      Additional damages for design patent infringement as permitted under 35 U.S.C. § 289;

C.      Increased damages as permitted under 35 U.S.C. § 284;

D.      A finding that this case is exceptional and an award to TMS of its reasonable attorneys' fees and costs as provided by 35 U.S.C. § 285;

E.      A preliminary and permanent injunction prohibiting Defendants, together with their respective agents, officers, servants, employees, assigns, successors, and attorneys, and all other persons acting in concert or active participation with them, pursuant to 35 U.S.C. § 283  from infringing the patents in suit; and

F.      Such other relief to which TMS is entitled under law, and any other and further relief that this Court or a jury may deem just and proper.

**COUNTS IV-VI and VIII-XV – LANHAM ACT and ILLINOIS STAUTORY AND COMMON LAW UNFAIR COMPETITION**

G.      A preliminary and permanent injunction immediately restraining Defendants, together with their respective officers, agents, servants, employees, assigns, successors, and attorneys, and all other persons acting in active concert or participation with them, pursuant to 15 U.S.C. § 1116(a) and any relevant Illinois state law provisions:

(i)    from selling, offering to sell, marketing, promoting, or advertising any goods and/or services under the TACMED mark or any mark confusingly similar thereto; and

(ii)    from making or publishing any false and/or misleading descriptions and/or representations concerning TMS or the TMS Tourniquet and/or any false and/or misleading descriptions or representations, stating, suggesting or implying that the T.a.t. tourniquet is affiliated with, sponsored, approved or in any way associated with TMS;

H.    Directing Defendants to deliver up to TMS all things in their possession bearing a description the TACMED mark and/or bearing the Tourniquet Photo or the Camouflage Photo and/or any other designation likely to be confused with TMS, pursuant to 15 U.S.C. § 1118 and any relevant Illinois state law provisions;

I.    Directing Defendants to account for and pay over to TMS all profits Defendants have obtained, received, or derived from selling, or offering to sell, the T.a.t. tourniquet, pursuant to 15 U.S.C. § 1117(a) and any relevant Illinois state law provisions;

J.    Awarding TMS all damages suffered by TMS as a result of Defendants' acts of false description of fact, false designation of origin, trade dress infringement and unfair competition, pursuant to 15 U.S.C. § 1117(a) and any relevant Illinois state law provisions;

K.    Awarding TMS up to three times TMS' damages and/or Defendants' profits, pursuant to 15 U.S.C. § 1117(a) and any relevant Illinois state law provisions;

L.      Declaring that this case is exceptional and awarding to TMS the attorneys'

fees it has incurred in investigating, bringing, and prosecuting this action,

pursuant to 15 U.S.C. § 1117(a) and any relevant Illinois state law provisions;

M.      Awarding TMS the costs and disbursements of this action;

N.      Awarding TMS punitive damages pursuant to any relevant Illinois state law

provisions;

## COUNTS VII and XVI – COPYRIGHT INFRINGEMENT CLAIMS

O.      A preliminary and permanent injunction immediately restraining

Defendants, together with their respective officers, agents, servants, employees,

assigns, successors, and attorneys, and all other persons acting in active concert

or participation with them, pursuant to 17 U.S.C. § 502 prohibiting Defendants

from copying, distributing, displaying and making derivative works from the

Tourniquet Photo and the Camouflage Photo;

P.      Directing Defendants to deliver up for impoundment pursuant to 17 U.S.C.

§ 503 all materials incorporating copies of the Tourniquet Photo and/or the

Camouflage Photo and deliver for destruction all infringing copies and all plates,

molds, and other materials by which infringing copies may be reproduced;

Q.      Awarding TMS all damages sustained by TMS in consequence of

Defendants' copyright infringement of the TMS Photo and the Camouflage Photo;

and

R.      Awarding TMS any other and further relief as is just.

Respectfully submitted,


 /S/ James B. Zaczek_____
James B. Zaczek, Esq.  (ID No. 6217079)
Law Office of Bert Zaczek
311 N. Aberdeen St.
Suite 300B
Chicago, IL 60607
(312) 527-1090
(312) 527-1082 (Facsimile)
bert@bzlegal.net

Frederick N. Samuels, Esq.
CAHN & SAMUELS, LLP
1100 17th Street N.W., Suite 401
Washington, D.C. 20036
(202) 331-8777
(202) 331-3838 (Facsimile)
Frederick.Samuel@cahnsamuels.com


ATTORNEYS FOR PLAINTIFF
Tactical Medical Solutions, Inc.