# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TACTICAL MEDICAL SOLUTIONS, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 14-cv-06035 ) ) Judge: John J. Tharp, Jr. |
| DR. RONALD KARL, EMI EMERGENCY MEDICAL INTERNATIONAL a/k/a EMERGENCY MEDICAL INSTRUMENTS, and COPQUEST, INC., | ) Magistrate Judge: Daniel G. Martin ) ) ) ) |
| Defendants. | ) ) |

## DEFENDANT EMI'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Plaintiff/Counterclaim Defendant Tactical Medical Solutions, Inc. ("TMS") is a corporation organized under the laws of the State of South Carolina, with its principal place of in South Carolina. (Dkt. No. 1, ¶2.)

2. Defendant/Counterclaim Plaintiff Dr. Ronald Karl d/b/a Emergency Medical International ("EMI") is a resident of the State of Illinois residing at 42 W. 550 Hawk Circle, St. Charles, Illinois and has a principal place of business at 44 W. 528 Rte. 64, Lily Lake, Illinois 60151. (Dkt. No. 1, ¶3; Ex. 1, R. Karl Dep. at 11:10-12; Dkt. No. 39, Answer to ¶1.)

3. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338, 1367 and 2201-2202 and 15 U.S.C. §1121. The Court has personal jurisdiction over the parties by virtue of the Complaint and Counterclaim being filed in this Court. (Dkt. No. 1; Dkt. No. 39, Answer to ¶4.) Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400(b). (Dkt. No. 1, ¶10; Dkt. No. 39, Answer to ¶5.)

4. Dr. Ronald Karl has for over 35 years been in the business of selling products focused on the emergency medical services ("EMS"), fire and police fields. (Ex. 2, R. Karl Decl., ¶1; Dkt. No. 1, ¶48.)

5. Dr. Karl is a highly experienced emergency medical care specialist who saw as a first responder the intensity and complexity of public safety professionals' jobs. (Ex. 2, R. Karl Decl., ¶2.)

6. Dr. Karl had a strong desire to support and serve these courageous men and women. (Ex. 2, R. Karl Decl., ¶3.)

7. Dr. Karl has conducted his business under several names over the years, but has conducted his business under the name EMI since before Plaintiff TMS began operations in 2003. (Ex. 2, R. Karl Decl., ¶4; Dkt. No. 1, ¶12.)

8. EMI started small with just a few products, but now offers over 300 products. (Ex. 2, R. Karl Decl., ¶5.)

9. EMI adopted the distinctive TACMED mark for certain of its products at least as early as 2002. (Ex. 2, R. Karl Decl., ¶6; Ex. 3, EMI 2002 Catalog at EMI00011.)

10. EMI has used its TACMED trademark in connection with marketing, advertising and sale of products in the EMS, fire and police fields continuously since 2002. EMI used its TACMED mark in association with its products as evidenced by each of its successive product catalogs, from which its distributors can purchase products, published approximately every two years in 2003, 2005, 2007, 2009, 2011 and 2013. One way to date the EMI Catalogs is to match their covers to a corresponding dated price list. Another way is to match up the dated printer invoices with the corresponding catalog. (Ex. 2, R. Karl Decl., ¶7; *See* Exs. 4-9, EMI 2003 Catalog, EMI 2005 Catalog, EMI 2007 Catalog, EMI 2009 Catalog, EMI 2011 Catalog, EMI

2013 Catalog; Ex. 1, R. Karl Dep. at 168:10-173:16; Exs. 36-41, Assorted EMI Price Lists; Ex. 10, Printer Invoices.)

11. In each catalog, EMI used the TACMED mark together with the "TM" symbol, making the industry and public aware of EMI's trademark rights. (Ex. 4, EMI 2003 Catalog at EMI00023, EMI00067; Ex. 5, EMI 2005 Catalog at EMI00087, EMI00137; Ex. 6, EMI 2007 Catalog at EMI00144, EMI00205; Ex. 7, EMI 2009 Catalog at EMI00212, EMI00273; Ex. 8, EMI 2011 Catalog at EMI00280, EMI00347; Ex. 9, EMI 2013 Catalog at EMI00397-402, EMI00404-07.)

12. EMI's use of its TACMED trademark has increased over the years. (Ex. 2, R. Karl Decl., ¶8.)

13. EMI's product catalog published in 2013 devoted 10 pages to EMI's TACMED product line. Each such page referenced TACMED with the "TM" symbol. (Ex. 2, R. Karl Decl., ¶9; Ex. 9, EMI 2013 Catalog at EMI00397-402, EMI00404-07.)

14. In EMI's first catalog using the TACMED mark in Spring 2002, EMI used the mark in association with three products: #M940 (5½" Bandage Scissor (Black)), #M960 (5½" Straight Kelly Forcep (Black)) and #M980 (4½" Splinter Forcep (Black)). (Ex. 2, R. Karl Decl., ¶10; Ex. 3, EMI 2002 Catalog at EMI00011.)

15. The page of the catalog displaying these three products includes the TACMED mark three times, each time as "TACMED$^{TM}$ Instruments." (Ex. 3, EMI 2002 Catalog at EMI00011.)

16. In addition, the 2002 EMI Product Catalog's Table of Contents referred to "TACMED$^{TM}$ INSTRUMENTS." (Ex. 3, EMI 2002 Catalog at EMI00004.)

17. In May 2002, EMI purchased 3,000 of the 2002 EMI Product Catalogs and sent the catalogs to its distributors around the country. (Ex. 2, R. Karl Decl., ¶11; Ex. 10 at EMI80083.) EMI purchased catalogs to send to its distributors around the country in later years in at least the following amounts on the following invoiced dates: 4,000 (11/25/03) (Ex. 10 at EMI80096), 3,000 (3/10/06) (Ex. 10 at EMI80106), 3,000 (6/30/07) (Ex. 10 at EMI80115), 750 REPRINT (5/7/09) (Ex. 10 at EMI80120), 5,000 (12/31/10) (Ex. 10 at EMI80122) and 5,000 (10/31/13) (Ex. 10 at EMI80127). (Ex. 2, R. Karl Decl., ¶11.)

18. The Spring 2002 Catalog included numerous other products for sale to the EMS, fire and police fields, including Nite-Writer Pens and Accessory Kits, Seat Belt/Webbing Cutters, Pocket Tools, Knives, Quick Response Holster Set, Commando Response Bags, Fanny Packs, Tactical Response Packs, 1st Responder Holster, Pro-Responder Holster, Radio Cases, Pager Cases, Laryngoscope Cases, Emergency Shears, Multi-Purpose Rescue Shears, Multi-Purpose Wallet Tool Kit, Flashback LED Light Baton, Emergency Penlights and Pocket Lights, and Jewelry and Emblem Pins for Military, EMS, Fire and Police. (Ex. 2, R. Karl Decl., ¶12; Ex. 3, EMI 2002 Catalog.)

19. Dr. Karl coined the TACMED mark for use in 2002. (Ex. 2, R. Karl Decl., ¶13.) TACMED was not a pre-existing word having any particular definition. (Ex. 2, R. Karl Decl., ¶13.)

20. In 2011, EMI started a website, www.emiinternational.net, to further increase the availability of information about its products. EMI has openly used its TACMED mark on its website, which is accessible throughout the United States, to advertise its TACMED product line. (Ex. 2, R. Karl Decl., ¶14.)

4

21. In addition to its product catalogs and website, since 2002, EMI has used and continues to use its TACMED mark on the packaging for its TACMED line of products. EMI sells and ships its TACMED products throughout the United States and internationally from its Illinois place of business. (Ex. 2, R. Karl Decl., ¶15.)

22. The vast majority of EMI's sales, including for the TACMED products, is to EMI's distributor network. EMI's distributors then resell the products either to other distributors or at retail. Some of EMI's distributors request hundreds of EMI catalogs to provide to their "sub" distributors in additional locations. EMI also makes some sales, including for the TACMED products, to end users, such as police departments. (Ex. 2, R. Karl Decl., ¶16.)

23. EMI's 2002 Product Catalog went to distributors in at least 37 states, as evidenced by EMI invoices for product sales from that many states in 2002. In 2003, EMI distributors from at least 38 states purchased EMI products and in 2004, distributors from at least 36 states did the same. (Ex. 2, R. Karl Decl., ¶¶17-20.)

24. EMI has since maintained a distributor presence in a similar number of states. As of 2015, EMI had 237 distributors in 40 states. (Ex. 2, R. Karl Decl., ¶21.) EMI's distributors resell EMI products, including those with the TACMED mark, to their customers in even more locations covering the nation. (Ex. 2, R. Karl Decl., ¶22.)

25. EMI has sold products under the TACMED trademark continuously from July 2002 to the present. (Ex. 2, R. Karl Decl., ¶23.)

26. EMI sold its first TACMED products in July 2002 and has sold TACMED products in every year since. (Ex. 2, R. Karl Decl., ¶24; Ex. 11, Evidence of EMI TACMED sales.)



27. ▮▮▮

28. ▮▮▮

29. ▮▮▮

30. ▮▮▮

31. TMS began operations in 2003 and sells a variety of products for first responders, emergency medical personnel, law enforcement and military personnel. In 2006, TMS changed its name to Tactical Medical Solutions, Inc. (Dkt. No. 1, ¶¶ 11-12, 30.)

32. TMS has filed at least five federal trademark applications trying to register TAC MED or TACMED as a mark. None of them claimed a date of first use earlier than "at least as early as August 31, 2008." (*See* Exs. 13-17.) The first three applications (Exs. 13-15), all of which were filed prior to TMS' Complaint, sought to register "TAC MED" (*i.e.*, with a space). TMS has now ceased such use and only uses the trademark as "TACMED" (*i.e.*, without a space). (Ex. 18, C. McDonough Dep. at 18:23-20:24; Ex. 12, TMS Rule 30(b)(6) Dep. at 68:6-

14.) After TMS filed its Complaint (and with the knowledge that EMI used the trademark as "TACMED"), TMS attempted to federally register EMI's "TACMED" mark. (Exs. 16-17.) The United States Patent and Trademark Office has rejected all of TMS' applications. (Ex. 19, F. Samuels Dep. at 47:20-48:1, 49:5-8, 50:13-16, 52:22-25.)

33. TMS used the federal registration symbol ® with the TACMED mark for years despite not ever having an applicable federal registration. (Ex. 20, TMS001855 and later screenshot; Ex. 21, R. Johnson Dep. at 129:8-135:14.)

34. The goods with which TMS has used the TACMED mark overlap and are closely related to the goods with which EMI has used the TACMED mark. Among the products that EMI sells under TACMED are medical kits, tourniquets, forceps, scissors, shears, medical bags, fanny packs and holsters (Ex. 2, R. Karl Decl., ¶28; Dkt. No. 1, ¶49) and TMS has used the TACMED mark in association with field medical kits, tourniquets, bandages and other products directed to the military, first responder and law enforcement communities. (Dkt. No. 1, ¶31.)

35. EMI's TACMED products are in "direct competition" with TMS' TACMED products. (Dkt. No. 1, ¶49.) EMI sells products under its TACMED mark that are "identical or related to TMS' products, e.g., tourniquets, field medical kits, etc., under the TACMED mark." (Dkt. No. 1, ¶¶94, 98.) (Ex. 9, EMI 2013 Catalog at EMI00396-407.)

36. TMS sells products in the EMS, first responder and military medical fields. (Dkt. No. 1, ¶30.) The fields of use in which TMS and EMI sell their products are largely overlapping. (Ex. 2, R. Karl Decl., ¶29.)

37. TMS promotes its TACMED products, *inter alia*, via product catalogs, its website and through distributors and resellers. (Dkt. No. 1, ¶¶ 15, 30.)

38. EMI advertises, promotes, sells and/or distributes its products to "a similar class of customers as TMS, including Internet resellers and distributors." (Dkt. No. 1, ¶55.)

39. Relevant consumers are highly likely to be confused as to the source, sponsorship, or affiliation of EMI's products due to the similarity between the products offered by EMI and TMS and due to the similarity between TMS' TACMED mark and EMI's TACMED mark. (Dkt. No. 1, ¶56.)

40. TMS' use of the TACMED mark is "likely to confuse, mislead and deceive a not insubstantial number of distributors, relevant consumers and other purchasers and members of the public as to the origin of the goods and services." (Ex. 2, R. Karl Decl., ¶30; Dkt. No. 1, ¶ 94.)

41. Both TMS and EMI sell medical kits under the TACMED mark. (Dkt. No. 39, Answer to Counterclaims, Answer to ¶27.)

42. TMS admits that the parties' TACMED marks are "confusingly similar." (Dkt. No. 1, ¶96.)

43. According to TMS' Second Supplemental Response to EMI's Interrogatory No. 3, "TMS currently uses or has used the TACMED mark with the following goods: TACMED Downed Officer Kit (10/2/14), TACMED Field Blood Transfusion Kit (7/29/15), TACMED Drop Leg Pouch (8/31/2010), TACMED Combat Medic Pouch 11/6/2014), TACMED Ankle Medical Kit (11/6/2013), TACMED ARK Evacuation Kit (10/23/2014), TACMED Ballistic Response Pack (2/18/08), TACMED Operator IFAK (9//1/0/2014), TACMED Patrol Aid Bag (12/9/2013), TACMED PHANTOM® Individual Medical Kit, TACMED PHANTOM® Multibag (8/1/14), TACMED RAID Bag (1/10/13), TACMED Surgical Set (2/12/08), TACMED Tourniquet Ankle Holster (10/17/14), TACMED LAPD Kit (3/11/15), TACMED ARK Casualty

8

Throw Kit (10/3/2014), TACMED Emergency Trauma Station (2/19/15), TACMED Uniformed Medical Kit (10/7/14), TACMED Adaptive First Aid Kit (3/23/2015), TACMED Pocket Medical Kit (5/12/15), TACMED ARK Active Shooter Response Kit (10/31/2014), and TACMED Any Mission Pack (10/9/2014), TACMED Tracheal Hook (10/1/14), TACMED Surgical Airway Kit (8/9/14), TACMED Tracheal Tool (10/10/14), TACMED PHANTOM® Hoist Emergency Extrication Rope Kit (5/27/15), TACMED Glove Pouch (10/14), TACMED hats (1/3/2013), TACMED patches (10/6/14), TACMED t-shirts (11/6/14), TACMED posters (10/10/14), TACMED stickers (10/10/14), TACMED Combat Casualty Tag (8/4/14), Comprehensive Medical Response Kit (9/17/15)), Medical Trauma Response Kit (1/16/15), Emergency Medical Responder Kit (6/4/2015), TACMED IV Evaporative Cooling System (8/1/14), TACMED Patrol Rifle (4/6/16) Response Pouch, TACMED Patrol Trauma Response Pouch (4/16/16), TACMED Poleless Litter (8/1/2014), TACMED PHANTOM® Individual Medical Pouch (8/1/14), TACMED Saline Lock Kit (8/1/14), TACMED Tourniquet Case (8/1/14), TACMED Tourniquet Straps (1/28/15), TACMED Vascular Access Kit (8/1/2014), TACMED Warm Zone Bag (5/20/15), TACMED K9 tourniquet, TACMED K9 Handler Kit (3/7/16), TACMED Complete Chest Tube Kit (4/29/16). The TACMED mark was first used with each respective product listed above at least as early as the date listed in parentheses and has been available for sale from at least as early as that date through the present. Each product was likely first shipped shortly after the date of first sale." (Ex. 22, TMS' Second Supplemental Response to Defendant EMI's Interrogatory Nos. 3, 4 and 16 at 4-5.)

44. TMS' use of the TACMED mark in connection with products that are identical or related to EMI's products marketed in connection with the TACMED mark constitutes unfair competition under Illinois law because TMS has caused a likelihood of confusion or of

9

misunderstanding as to the source, sponsorship, approval or certification of TMS' products and as to TMS' affiliation, connection and association with or certification by EMI. (Dkt. No. 1, ¶98.)

45. TACMED does not require proof of secondary meaning to serve as a trademark for the EMI products with which it is used. (Ex. 2, R. Karl Decl., ¶31; *see also* Ex. 12, TMS Rule 30(b)(6) Dep. at 55:7-10, 56:14-19; Ex. 23, TMS Response to RFA Nos. 5-8 (failure to deny as to listed products); *see also* Ex. 24, TMS Response to Interrogatory No. 18 as to RFA Nos. 5-8 ("TACMED does not require proof of secondary meaning to serve as a trademark . . ."))

46. TMS alleges in its Complaint: "Throughout its existence, TMS has continuously and actively promoted itself, its products, and its services through various channels in the trade including, notably, the ongoing production and distribution of product catalogs, ongoing use of tis website, ongoing promotion through distributors and resellers, and by regularly attending industry trade shows. TMS also enjoys substantial word-of-mouth marketing from its many satisfied customers. As a result of its programs and efforts, over the past decade, TMS has established very substantial goodwill and a correspondingly substantial network of regional and national resellers and distributors." (Dkt. No. 1, ¶15.)

47. TMS alleges in its Complaint: "TMS, which is commonly referred to in the trade as TACMED, is a nationally and internationally known manufacturer and distributor of a wide range of products particularly in the emergency medical service (EMS), first responder and military medical fields. TMS promotes and sells its products in a variety of ways, including but not limited to directly through its website at www.tacmedsolutions.com, through booths at trade shows, and through government contracts. TMS also uses a network of national and international resellers and distributors to actively promote and sell its products." (Dkt. No. 1, ¶30.)

48. TMS alleges in its Complaint: "At a minimum, since before 2009, TMS has consistently and continuously used the mark TACMED in connection with the sale and marketing of field medical kits, tourniquets, bandages and other products directed to the military, first responder and law enforcement communities. As a result, the TACMED mark has become a source designator for TMS with respect to these communities. Consumers in any one of the military medical, first responder, and law enforcement communities have come to recognize goods bearing the TACMED mark as goods originating from TMS." (Dkt. No. 1, ¶31.)

49. TMS alleges in its Complaint: "By virtue of TMS' extensive sales, advertising and promotion of its business and products under the TACMED mark and trade name, TMS has become well known to the consumers throughout the United States and abroad and the TACMED name is widely recognized as being associated with TMS and its line of products." (Dkt. No. 1, ¶32.)

50. TMS has admitted to three instances of actual confusion based on the parties' respective uses of the TACMED mark as testified to by TMS' Rule 30(b)(6) witness on instances of actual confusion. (Ex. 12, TMS Rule 30(b)(6) Dep. at 50:1-53:18.)

51. TMS filed its Complaint on August 6, 2014. After TMS filed its Complaint—but before serving it on EMI and Dr. Karl on August 25, 2014 and August 26, 2014, respectively—TMS sent letters to at least seven EMI distributors threatening them for selling EMI's TACMED products. (*See* Ex. 25, TMS Letters to EMI Distributors.) TMS included a copy of the Complaint, which also named a co-defendant (CopQuest) who had sold EMI products. By the time EMI was served with the Complaint, EMI had learned about the litigation from a distributor who returned all of its EMI products. (Ex. 2, R. Karl Decl., ¶32.)

11

52. EMI has placed its TACMED trademark on the packaging for its TACMED products continuously since 2002. EMI uses the TACMED mark, *inter alia*, by placing it in all capital, white, block letters on pre-printed packaging. EMI includes the TACMED mark on pre-printed packaging for some products, such as the basic response kit and the 1st responder holster set. (Ex. 2, R. Karl Decl., ¶33; Ex. 26 at EMI80005-06.) EMI places the TACMED mark on other packaging through use of a separately adhered sticker. (Ex. 2, R. Karl Decl., ¶33; Ex. 27 at EMI80007-08.)

53. TMS uses the TACMED mark in all capital, white block letters on its product packaging. (*See e.g.*, Ex. 28 at TMS010096, TMS010100, TMS010102, TMS010104.)

54. In its Complaint, TMS alleged secondary meaning with respect to the alleged TMS Trade Dress and tourniquet handle design, but not as to the TACMED mark, which would have been required for TMS to have alleged rights in the TACMED trademark if TMS really believed the TACMED trademark was "descriptive." (*See* Dkt. No. 1, ¶¶42, 123, 151.)

55. Many reseller websites sell TACMED products from both EMI and TMS, including, www.cardiaclife.net, www.lapolicegear.com and www.officer.com. (*See* Ex. 2, R. Karl Decl., ¶34; Exs. 29-31, Examples of reseller websites selling TACMED products from both EMI and TMS.)

56. The TACMED products sold by EMI and TMS generally vary in price from a few dollars to hundreds of dollars. (Ex. 2, R. Karl Decl., ¶35.)

57. TMS' Complaint does not mention the degree of care likely to be exercised by consumers. (Dkt. No. 1.)

58. "TACMED" does not appear in the dictionary. (*See* Ex. 32.)

59. TMS obtained Illinois Registration No. 107029 for TACMED for "field medical kits, tourniquets." The application listed a date of first use anywhere of 8/31/2008 and a date of first use in Illinois of 8/23/2010. The application was dated September 12, 2014, shortly after TMS filed the Complaint. TMS did not provide "evidence that the mark has become distinctive." TMS could not have provided evidence of five years of continuous use in Illinois as it filed the application on September 12, 2014 and its admitted first use in Illinois was August 23, 2010. (*See* Ex. 33.)

60. The Illinois Trademark Registration and Protection Act provides:

> A mark by which the goods or services of an applicant for registration may be distinguished from the goods or services of others shall not be registered if it: . . . (e) consists of a mark which: (1) when used on or in connection with the goods or services of the applicant, is merely descriptive . . . of them . . . however, nothing in this subsection (e) shall prevent the registration of a mark used by the applicant which has become distinctive, as used on or in connection with the applicant's goods or services. The Secretary may accept as evidence that the mark has become distinctive, as used on or in connection with the applicant's goods or services, proof of continuous use thereof as a mark by the applicant in this State for the 5 years before the date on which the claim of distinctiveness is made.

765 ILCS 1036/10.

61. TMS often displays its name near the TACMED mark. (*See e.g.*, Ex. 28.)

62. On or about July 16, 2013, Ross Johnson, President and CEO of TMS, sent an email to Tod Sackett stating that "If I can get some more info on who EMI is I might be able to make an example out of them." (Ex. 34, R. Johnson Dep. Ex. 3, TMS003660.)

63. At his deposition, Mr. Johnson claimed that he could not remember whether the reference to EMI was a reference to a defendant in this case. (Ex. 21, R. Johnson Dep. 16:19-20:20.)

13

64. On or about April 23, 2014, Ross Johnson, President and CEO of TMS, sent an email to Katherine Gray about EMI stating that TMS had "been working on the lawsuit against them for about 6 months." (Ex. 35, R. Johnson Dep. Ex. 4, TMS005255.)

65. In a related email, Mr. Johnson stated with respect to EMI that "they will hopefully be out of business in a few months." (Ex. 35, R. Johnson Dep. Ex. 4, TMS005255.)

Dated: February 16, 2017

Respectfully submitted,

/s/Patrick L. Patras
James D. Ryndak (2435942)
Patrick L. Patras (6210929)
**HINSHAW & CULBERTSON LLP**
222 North LaSalle Street, Suite 300
Chicago, Illinois 60601
Tel: (312) 704-3000
Fax: (312) 704-3001

*Attorneys for Defendant EMI*

**CERTIFICATE OF SERVICE**

      I, the undersigned attorney, certify that a true and correct copy of the foregoing document was filed on February 16, 2017 with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following:

Frederick N. Samuels
Cahn & Samuels, LLP
110 17th Street, NW
Suite 401
Washington DC 20036-4650
(202) 331-8777

Bert Zaczek
Law Offices of Bert Zaczek
311 N. Aberdeen
Suite 200-D
Chicago, IL 60607
(312) 527-1090
*Counsel for Plaintiff*

                                                   /s/Patrick L. Patras
                                                 Patrick L. Patras